plained in the specification. Second. Because a waxed or tarred thread would stick in the longitudinal groove, and prevent the formation of a loop for the passage of a shuttle. Third. Because such a needle, in sewing thick goods, such as thorough-braces, would have to be so long that it would be inoperative.

Attempts, as the patentee states, have been made to obviate the difficulties in the use of the eye-pointed needle by employing an awl for puncturing the leather in combination with a hooked needle which pulls the thread down through the fabric; but these improvements will only produce a single-thread stitch, and that with difficulty, as it causes so much friction as to render it extremely difficult to use the shuttle.

Experiments were made to overcome those difficulties, and they showed that the following conditions in the machinery were desirable in order to produce a double or lock-stitch in leather or other fabrics that are to be united with a waxed thread: (1) That a substitute for an eye-pointed needle was required which would be free from the defects of the eye of the eye-pointed device. (2) That a shuttle or other device for interlocking one thread with another should be so combined with the other devices as to pass through the loop of the needle-thread without strain or friction. (3) That the tightening of the stitch should be performed, when the needle or other instrument is not in the goods, with the waxed thread. (4) That the thread, while it is being passed down through the fabric, should be slack, or without being subject to tension, during the whole time of its being so passed.

Pursuant to these suggestions, the patentee, when making the lock-stitch, employs an open-eyed hooked needle, combined with the shuttle shown in the drawings, and he also employs an apparatus called "take-up" in such a manner that while the thread is being conveyed through the fabric it is slack and subject to no tension. Detailed description is then given of every device in the sewing apparatus, and of the function which each performs, and of their mode of operation, but, in conclusion, the patentee states that the same result may be obtained by using the hook or crochet needle as the piercing instrument, and by binding the fabric by that or any other devices.

Six claims are appended to the descriptive portion of the specification, and the charge in the bill of complaint is that the respondents infringe the fifth and sixth, which are as follows: "(5) In combination with a rocker-shaft above the work-plate, the awl-bar and thread-guide, as and for the purpose set forth. (6) A shaft arranged above the work-plate, for the operation of the awl in combination with a shaft below the table, for the operation of the needle, and suitable connecting mechanism, as and for the purpose set forth."

Six or more patents were introduced in evidence by the respondents as comprising the patented invention of the complainants. These were all carefully examined and described by the expert witness called and examined a second time. In conclusion, he states, in very explicit terms, that he does not find in any of those exhibits a rock-shaft located in the goose-neck of the machine for the operation of an awl and thread-guide, nor that any of them employ a shaft below the table for the operation of a needle, and a shaft above the table for the operation of an awl, and a connecting mechanism, which he regards as the essence of the fifth and sixth claims of the reissued patent described in the bill of complaint.

Expert witnesses were also examined by the respondents, whose testimony differs from that referred to; but the court is of the opinion that the views expressed by the complainants' principal expert witness are correct, and that none of the patents in question are of a character to supersede the complainants' reissued patent.

5. Extended discussion of the question of infringement will be unnecessary, as the parties have agreed, in writing, that the respondents made, or participated in the making of, machines like the exhibit described in that specification. The court has already decided in the preceding case that such machines do infringe the mechanism described in the reissued specification. Nothing is exhibited in the present record to take the case out of the rule there laid down, and the court is of the opinion that the charge of infringement is fully proved.

Decree for complainants for an account and for an injunction, with costs.

THOMAS. The (STORAGE CO. v.). See Case No. 3,769.

THOMAS (STOWE v.). See Case No. 13,514.

## Case No. 13,912.

### THOMAS v. SUMMERS.

[5 Cranch, C. C. 434.] [1]

Circuit Court, District of Columbia. March Term. 1838.

#### JUDGMENT—SUPERSEDEAS—INDORSEMENT.

A justice of the peace cannot issue an execution, as on a supersedeas, upon the mere indorsement on the back of the original judgment, that it was superseded.

Appeal from the award of execution by a justice of the peace, upon a supposed supersedeas. The only evidence of a confession of judgment by way of supersedeas, according to the act of assembly of Maryland, was an indorsement on the back of the original warrant, upon which the original judgment

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

was entered, that it was superseded by Amelia Thomas, the appellant, and a similar entry on the justice's docket. Reversed (nem. con.).

Mr. Hoban, for plaintiff.

Mr. Redin, for defendant [Owen Summers].

THRUSTON, Circuit Judge, said that if there had been evidence that diligent search had been made among the deceased justice's papers for the regular certificate of the confession of judgment, he should think the indorsement of the justice sufficient.

THOMAS, The (TRUMP v.). See Case No. 14,206.

THOMAS (TURNBULL v.). See Case No. 14,243.

THOMAS (UNITED STATES v.). See Cases Nos. 16,472–16,477.

## Case No. 13,913.

### THOMAS v. WATSON.

[Taney, 297.] [1]

Circuit Court, D. Maryland. Aug. 27, 1846.

GAMING—USURY—PENALTIES—PLEADING IN EQUITY—ANSWER—RES JUDICATA—INSOLVENCY — SUIT BY TRUSTEE.

1. L. confessed judgment on two promissory notes, one of which was given upon a usurious and the other upon a gambling consideration, and afterwards became insolvent, and a trustee of his estate was appointed under the insolvent laws of Maryland. The trustee filed a bill for relief from an execution issued upon the judgment, and called on the judgment-creditor to state the true consideration of said notes.

2. On demurrer to the prayer for such discovery, held, that as the defendant had not objected to answering, on the ground that his answer might subject him to a penalty or forfeiture, and had not averred in his answer that the discovery sought for would bring him into any such danger, he could not avail himself of this defence on the argument.

3. Even if this defence had been made in the answer, it could not be sustained: (1) Because, as to the usury, the mere making of a usurious agreement, or taking a bond or other obligation to secure it, does not subject the lender to a penalty or forfeiture; (2) because, as to the gaming, he was not asked to state the circumstances under which the money was won; he was required simply to state whether the consideration was a gaming debt or not, and there are many ways in which he might have won the money without subjecting himself to a penalty.

4. Although an affirmative answer would undoubtedly prevent the party from recovering the money, yet that is not a penalty or forfeiture, within the meaning of the law, to excuse him from answering. If the money had been paid by L. upon these two notes, the complainant might, upon a bill filed, have recovered it back.

5. The principle upon which the court grants relief after a voluntary payment of money, must also entitle the party to relief after a voluntary confession of judgment.

6. The omission of L. to defend himself in the action at law, is no bar to the relief asked for

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

by the complainant; these questions not having been raised in that suit, nor yet been decided in any court.

7. The rights and defences possessed by L. at the time of his release, are transferred to his trustee; and the complainant may now make the same defences, at law or in equity, against these claims, and against the judgment upon them, which L. could have made, if he had never become insolvent.

8. Although the Maryland act of 1845 (chapter 352) abrogates the penalties inflicted by the act of 1704 (chapter 69), in cases of usury, and permits the party to recover the sum actually loaned, with legal interest thereon, yet the contract, so far as the usurious interest is concerned, is still made void, and the policy of the former law upon the subject, in that respect, remains unaltered.

The bill in this case was filed on the 18th day of December, 1845, by [Philip F. Thomas] the permanent trustee of J. M. Lloyd. Its object was to obtain relief, by injunction, against a judgment for $6,571.95, recovered in this court on the 18th day of April, 1844, against the said Lloyd, by Henry H. Watson, a resident of the city of New York. It stated that at the time of the confession of said judgment, Watson held two promissory notes of Lloyd, one of which amounted, principal and interest, at the date of the judgment, to about $4.328, and was given in consideration of a loan of money usuriously made by said Watson to said Lloyd; and the other of said notes was given for money lost at play, and for no other than a gambling consideration. That on the day of the rendition of the judgment, or immediately before, an agreement was entered into by the said Lloyd, with the counsel of Watson, to confess judgment for the sum of four thousand dollars and costs; that, at the time of the agreement, the promissory notes were not shown to Lloyd, nor was any calculation made of the amount due on them. the said Lloyd's agreement being to confess judgment for $4.000, and no more; and that he left town with the belief that judgment was so confessed, and remained under that impression till recently; that independently of said agreement, an error was made, as the defendant admits, in the rendition of the judgment, which is for $485.59 more than purports to be due on said notes. That said Watson had caused execution to be issued for the whole amount of the judgment, and had levied upon the lands held by said Lloyd at the date of the judgment, and had advertised the same for sale. That although Lloyd himself did not avail himself of the defences which he might have made to the suit on said notes. yet the complainant, as his trustee in insolvency, and in respect of the rights of his creditors, was entitled to be relieved from the effect of said judgment, to the extent of its excess over and above the money actually loaned by said Watson to said Lloyd, and the legal interest thereon, which he, the complainant, was willing and tendered to pay to said Watson. That the complainant claimed the benefit of